UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DEMARIO DONTEZ WALKER                                            PLAINTIFF

VERSUS                                        CIVIL ACTION NO. 1:17CV27-RHW

JOHNATHAN D. HUNT et al                                    DEFENDANTS

## MEMORANDUM OPINION & ORDER

Plaintiff Demario Dontez Walker, proceeding *pro* se and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint alleging unconstitutional conditions of confinement at the South Mississippi Correctional Institution (SMCI). Doc. [1]. Plaintiff previously has been assessed three strikes and is therefore barred from filing complaints *in forma pauperis* unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see* Doc. [10]. In fact, Plaintiff has filed dozens of prisoner civil rights lawsuits and accumulated at least three strikes under the Prison Litigation Reform Act (PLRA). *See Walker v. Norwood*, No. 3:08-cv-275-TSL-JCS, 2009 WL 387337 (S.D.Miss. Feb. 13, 2009); *Walker v. Lewis*, Civil Action No. 3:12cv441-CWR-LRA (S.D. Miss. July 10, 2012) (identifying some of Plaintiff's prior dismissed lawsuits that counted as "strikes").

In his original complaint, Plaintiff alleges repeated and ongoing assaults and extortion by other inmates. He further alleges that SMCI staff has lost control and authority over the prison gang members. According to Plaintiff, SMCI staff has failed to protect him from the assaults and has placed him in a dangerous housing unit. Plaintiff also alleges unconstitutional conditions of confinement in the administrative segregation unit at SMCI. On March 21, 2017, Plaintiff filed an amended complaint. Doc. [5]. In the amended complaint, Plaintiff reasserts

that he was the victim of assaults, sexual assaults, and extortion by prison gang members, and that gang members forced him to hide contraband in his rectum. Plaintiff further alleges that he received Rule Violation Reports (RVRs) on January 19, 2017, that did not comport with due process and were issued in retaliation. Plaintiff complains that on March 10, 2017, Defendant Johnathan Hunt placed a "red tag" on inmate Fredderick Thompson for no reason other than Defendant Hunt believed Plaintiff and Thompson were in a "dating relationship". Plaintiff then filed a motion to amend complaint on March 21, 2017, which the Court granted in part. Doc. [9] & [11]. Then again on May 9, 2017, Plaintiff filed a motion to amend complaint, which the Court granted. Doc. [22] & [23]. The amended complaints essentially restate the claims in his complaint and amended complaint, but with added details.

Plaintiff subsequently filed a series of motions to amend his complaint and to add parties. On May 25, 2017, he filed a motion to amend the complaint, a motion to add plaintiffs, and a motion to add certain defendants. Doc. [24] [28] [29]. In the first of these motions, he sought to substitute Pelicia Hall as Defendant, based on her appointment as Commissioner of the Mississippi Department of Corrections (MDOC). Doc. [24]. He also requested that inmate Fredderick Eugene Thompson be allowed to join the lawsuit as a plaintiff. *Id.* In the motion to add plaintiffs, he submitted a list of approximately 70 additional inmates whom he wished to join to his lawsuit. Doc. [28]. In the motion to add defendants, Plaintiff requested that Lt. B. Miller and Captain Lockhart be added as defendants. Doc. [29]. On June 27, 2017, Plaintiff filed what was designated as yet another motion to amend his complaint. Doc. [37]. In fact, the pleading is a 34-page proposed complaint. On July 13, 2017, he filed another motion to amend his complaint. Doc. [51]. In the two-page motion, he requested that Belinda Miller, Captain Lockhart, Investigator Houston, Unknown K-9 Officers, Captain Mark Davis, K-9 Officer Keys,

2

and Officer Jamario Clark be added as defendants. He also requested that several new plaintiffs be joined to the lawsuit. Plaintiff then attached a 45-page proposed Fifth Amended Complaint. Doc. [51-1]. By order dated July 19, 2017, the Court denied for the most part these five additional motions to amend the complaint. Doc. [53]. However, Plaintiff was permitted to proceed against two new defendants (Lt. B. Miller and Captain Lockhart), as well as on claims for assault and conversion. *Id.* at 7.

Even after the Court's order of July 19, 2017, Plaintiff filed nine additional motions to amend his complaint, which the Court denied. *See* Doc. [165]. The Court conducted a screening hearing on November 9, 2017, at which time Plaintiff testified under oath regarding the allegations in his complaint. At the hearing, Plaintiff received almost 600 pages of documents, which included relevant portions of Plaintiff's institutional record, medical records, and Administrative Remedy Program (ARP) documentation. The parties consented to proceed before a United States Magistrate Judge. The Court established a discovery deadline of March 14, 2018, and a dispositive motion deadline of April 4, 2018. Doc. [188].

Plaintiff proceeded to file a plethora of discovery-related motions prior to the discovery deadline, nineteen by the Court's count. Meanwhile, on April 4, 2018, Defendants filed a motion for summary judgment which asserted, among other things, that Plaintiff failed to exhaust administrative remedies with respect to all claims asserted in his original and amended complaints. *See* Doc. [286] [287]. In the interests of judicial economy, the Court entered an order directing Plaintiff to file a response limited to the exhaustion issue and set a deadline of May 4, 2018, for Plaintiff to file his response. Doc. [289]. Plaintiff continued to file an additional 16 discovery-related motions after the discovery and motions deadlines had expired. In addition, he filed at least 17 "responses" to Defendants' motion for summary judgment.

3

Again, in the interests of justice and judicial economy, the Court determined that, prior to ruling on Defendants' motion for summary judgment, Plaintiff should be afforded the opportunity to file a single, consolidated motion for discovery on the exhaustion issue. Doc. [373]. Accordingly, the Court set a deadline of July 6, 2018, for Plaintiff to file one and only one motion for discovery limited to the issue of exhaustion. The Court stayed all other discovery until ruling on the exhaustion issue and directed Plaintiff to refrain from filing any more discovery motions unrelated to the exhaustion issue. Plaintiff duly filed a motion for exhaustion-related discovery on July 10, 2018. Doc. [376]. The Court denied Plaintiff's motion. Doc. [381]. The then Court struck Plaintiff's 17 prior responses to summary judgment and directed Plaintiff to file, by October 15, 2018, a single response to Defendants' motion for summary judgment, limited to the issue of exhaustion. *Id.* at 5. The Court later granted Plaintiff an extension to December 3, 2018, to file his single response to Defendants' motion. Doc. [384].

Apparently not satisfied by the Court's admonition to file a single response to summary judgment, Plaintiff has filed three additional responses to summary judgment. *See* Doc. [386] [390] [394]. Plaintiff later filed a motion to withdraw his response filed on October 18, 2018, which motion the Court now grants. Doc. [395]. Thus, there remain two responses to Defendants' motion for summary judgment. Despite Plaintiff's breach of the Court's directive, when ruling on Defendants' motion for summary judgment, the Court will consider the following of Plaintiff's pleadings: Plaintiff's response filed November 19, 2018 (Doc. 390); exhibits to the response filed on December 6, 2018 (Doc. [392]); and Plaintiff's response filed on December 10, 2018 (Doc. [394]).

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

As part of his response to summary judgment, Plaintiff cites to *Martin v. Harrison County Jail*, 975 F.2d 192 (5th Cir. 1992) and argues that "a pro se prisoner faced with a summary judgment motion must receive an understandable notice of the requirement of the summary judgment rules." Doc. [394] at 3. In fact, the case cited by Plaintiff stands for the exact opposite proposition. In *Martin* the Fifth Circuit held that "particularized additional notice of the potential consequences of a summary judgment motion and the right to submit opposing affidavits need not be afforded a pro se litigant." *Id.* at 193. Despite Plaintiff's blatant misrepresentation of Fifth Circuit precedent, Plaintiff demonstrates in his response to the motion for summary judgment that he fully understands summary judgment procedures. *See* Doc. [390] at 3-4.

**<u>Exhaustion of Administrative Remedies</u>**

The only issue currently under consideration by the Court is whether Plaintiff exhausted administrative remedies prior to bringing his lawsuit. Exhaustion of administrative remedies through the prison grievance system is a jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983. *Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *See Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance

procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal". *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement. The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The PLRA and its exhaustion requirement was created with litigants such as Plaintiff in mind. As shown in this and other cases, Plaintiff has a habit of ignoring the Court's directives, filing frivolous lawsuits, and filing duplicative motions and pleadings. In a rush to the courthouse and immediate judicial intervention, Plaintiff ignored the PLRA's exhaustion requirements. Once he was allowed to proceed under the "imminent danger" exception to the three-strike rule, Plaintiff then attempted to join every conceivable claim about prison conditions into his lawsuit. As will be discussed, Plaintiff failed to exhaust administrative remedies with respect to any of the claims in his original and amended complaints prior to initiating this lawsuit. Plaintiff's litigation conduct has resulted in an unnecessarily protracted process, only to reach the ultimate conclusion that his lawsuit must be dismissed without prejudice for failing to exhaust the prison's grievance process prior to filing the instant litigation.

**Gang Activity, Sexual Assaults and Extortion**

The primary allegation in Plaintiff's complaint is that he has been assaulted and raped repeatedly from October 25, 2016 through March 10, 2017. He also alleges that gang members extorted $6,500 of protection money from him and forced him to put contraband cell phones and drugs in his rectum. He alleges that prison officials failed to keep gang activity under control; failed to protect him from rapes, assaults, and extortion; failed to investigate his allegations of gang activity; and retaliated against him.

In his complaint, Plaintiff apparently concedes he did not properly exhaust administrative remedies with regard to the claims in his complaint. Instead, he indicates that the ARP grievance he filed was "returned as rejected" because it contained multiple issues. Doc. [1] at 3. Pursuant to MDOC policy, a grievance will be rejected if it contains multiple issues. *See* Doc. [286-5]. Thus, by his own admission, Plaintiff did not fully and properly exhaust administrative remedies prior to filing suit.

At the screening hearing, contrary to indications in his original complaint, Plaintiff asserted that in fact he did exhaust administrative remedies and did complete the two-step process. However, this assertion does not stand up to scrutiny. At the hearing, Plaintiff later clarified that he felt he had exhausted these claims merely because he filed sensitive issue ARPs. According to Plaintiff, he filed sensitive issue ARPs for everything in his complaint. He indicated that once the CID investigator accepted his sensitive issue ARP, it was his belief that he had completed the exhaustion process and that no other step is necessary prior to filing a lawsuit. Plaintiff is mistaken. The mere fact that Plaintiff initiated sensitive issue ARPs does not excuse his failure to complete the administrative remedy process. *See McLemore v. Fisher*, 2016 WL 4004669, at *2-3 (S.D.Miss. June 29, 2016) ("submission of a sensitive ARP was, at best,

step one" of the administrative remedy process). *See also McFadden v. Fisher*, 2016 WL 6635639, at *3 (S.D.Miss. Nov. 9, 2016). Nor is a CID investigation a recognized substitute for exhaustion of the ARP process. *See* Doc. [286-5] (MDOC policy outlining the ARP process). Plaintiff's misunderstanding about sensitive issue ARPs does not excuse his failure to meet the PLRA's exhaustion requirement.

On January 13, 2017, just four days prior to signing his original complaint, Plaintiff did submit a sensitive issue ARP addressing some of the claims in his complaint, notably the allegation that he was forced to smuggle drugs for gang members and that he was extorted out of $6,500. Doc. [286-1]. The grievance was accepted as a sensitive issue submission on February 8, 2017, which occurred *after* Plaintiff filed his complaint on February 1, 2017. *Id.* at 1. Thus, the only sensitive issue ARP identified in the record does not satisfy the exhaustion requirement, because the administrative processing post-dated Plaintiff's lawsuit. *See Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998) (holding that "administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending."); *Evans v. Grubbs*, 2011 WL 2565298, at *2 (S.D.Miss. June 28, 2011).

At the screening hearing, Plaintiff also admitted that he did not identify by name any of the Defendants in the sensitive issue ARP, even though he apparently knew their identities. In *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004), the Fifth Circuit addressed the minimum requirements for exhaustion of administrative remedies, noting that a prisoner is not required to identify defendants by name in all instances, "[b]ut, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the

9

problem." The names of the individual Defendants were known to Plaintiff, but he failed to comply with the minimum requirements set down in *Johnson v. Johnson*. As such, he failed to exhaust administrative remedies with regard to conduct by individual prison officials.

**Conditions in Administrative Segregation**

In his complaint, Plaintiff alleges that conditions in administrative segregation were unconstitutional. He alleges that his cell did not have light, hot water, an intercom, or a writing or eating surface. The cell also had a broken window, exposed electrical wiring, and a faulty toilet. As an initial matter, given the fact that Plaintiff has been assessed three strikes under the PLRA, his claim regarding conditions in administrative segregation does not meet the "imminent danger" requirement for proceeding *in forma pauperis*. Moreover, Plaintiff was housed only for a brief period (approximately 20 days) in administrative segregation at SMCI, and he is no longer incarcerated at SMCI. Accordingly, the claim appears to be moot. Regardless, Plaintiff failed to exhaust administrative remedies as to this claim prior to filing his lawsuit. According to Plaintiff's "Drill Down Detail Report", he was in administrative segregation from January 1, 2017, to January 17, 2017. *See* Doc. [286-2] at 2. At the screening hearing, Plaintiff indicated he was in administrative segregation from December 31, 2016 until January 19, 2017, which roughly confirms the relevant time frame. Plaintiff signed the instant complaint January 17, 2017, on the day or shortly before he was released from administrative segregation. Accordingly, he could not have exhausted administrative remedies for conditions in administrative segregation prior to the date he filed his lawsuit.

**Rules Violation Reports**

Plaintiff challenges the issuance of two Rules Violation Reports (RVRs) issued on January 19, 2017. These RVRs were not finalized until March 2017. Accordingly, Plaintiff

could not have exhausted administrative remedies with respect to the challenged RVRs prior to filing the instant lawsuit, which he signed January 17, 2017 and filed on February 1, 2017. In fact, at the screening hearing, Plaintiff admitted that he did not fully exhaust remedies regarding the RVRs until March 2017, long after he filed the lawsuit. He stated that he filed a sensitive issue ARP but did not go through the traditional two-step grievance process.

**"Red Tag"**

In Plaintiff's amended complaint, he makes the claim that Defendant Johnathan Hunt improperly placed a "red tag" on inmate Fredderick Thompson because Hunt believed Plaintiff and Thompson were in a "dating relationship". In other words, Plaintiff wishes to have the "red tag" removed from Thompson, presumably so that the two are not required be housed in separate units. This claim does not satisfy the imminent danger exception to the three-strike rule under the PLRA. To the contrary, Plaintiff alleges he is under no threat of harm from Thompson. Doc. [5] at 4-5. Thus, Plaintiff admits that Thompson poses no imminent danger of serious physical injury to him. Regardless, Plaintiff alleges that Hunt placed the "red tag" on Thompson on March 10, 2017, over a month *after* Plaintiff filed the instant lawsuit. Accordingly, Plaintiff could not have exhausted administrative remedies as to this alleged constitutional violation prior to initiating litigation.

**Plaintiff's Other Arguments**

In response to Defendants' motion for summary judgment, Plaintiff makes several additional arguments: (1) he alleges he received a second step response prior to filing the instant lawsuit; (2) the second step response was not signed or dated by an MDOC official; (3) emails between Jerry Williams and Sean Smith reference several previous complaints from Plaintiff that pre-date the sensitive issue grievance cited by Defendants; (4) incidents reported as occurring on

March 10, 2017, reflect that eight months prior to filing suit, Plaintiff filed an ARP; (5) threats or intimidation prevented him from filing grievances; (6) any defect in exhaustion should be excused because of Plaintiff's mental health issues; and (7) Defendants did not submit as an exhibit its grievance procedures or policy.

Taking each of Plaintiff's arguments in turn, there is nothing in the record indicating that Plaintiff received a second step response prior to filing this lawsuit. In fact, this assertion contradicts Plaintiff's own testimony at the screening hearing, where he indicated that he understood filing a sensitive issue ARP to excuse him from going through the two-step ARP process. Although Plaintiff received a copy of his relevant ARP records at the screening hearing, he has not provided a copy of any second step response demonstrating exhaustion prior to filing suit.

Plaintiff next argues that the second step response form submitted by Defendants as an exhibit is not signed or dated. *See* Doc. [286-1] at 3. While true, this is not a material fact for summary judgment analysis. Plaintiff's sensitive issue ARP was not accepted until February 8, 2017, after Plaintiff filed his lawsuit. *Id.* at 2. The second step response, although not dated, states that Rita Bonner "has a suspense date of March 24, 2017 to answer and copy you on the ARP concerning her investigation into this matter." *Id.* at 3. Again, the "suspense" deadline post-dates the filing of Plaintiff's lawsuit and further confirms that Plaintiff failed to exhaust administrative remedies prior to bringing suit.

Plaintiff asserts that emails between Jerry Williams and Sean Smith reference several previous complaints from Plaintiff that pre-date the sensitive issue grievance cited by Defendant. Plaintiff does not provide copies of these alleged emails but simply asserts without proof that they exist. Although he urges that these emails reference several previous complaints, Plaintiff

12

provides no specifics as to the contents of the complaints, the timelines of the complaints, or whether the complaints in fact were submitted as ARPs and carried through to completion in the administrative process. Plaintiff's argument about mystery emails is simply hearsay and does not constitute competent summary judgment evidence.

In a pleading titled "Exhibits to Plaintiff Response to Defendants Motion for Summary Judgment", Plaintiff appears to argue that an incident dated March 10, 2017, somehow proves that he filed an ARP in June 2016. *See* Doc. [392]. Plaintiff flatly mischaracterizes the exhibit. The "Incident Description" states that on March 10, 2017, Plaintiff sent an ARP to the Deputy Commissioner alleging that certain problems began in June 2016. The "Incident Description" does not identify an ARP as having been filed in June 2016. Rather, it references an ARP submitted on March 10, 2017, wherein Plaintiff discussed a change in housing assignment that occurred in June 2016. The exhibits provided by Plaintiff post-date the filing of his lawsuit by more than a month. They do not constitute competent or compelling summary judgment evidence.

Plaintiff asserts that threats and intimidation, as well as mental health issues, prevented him from filing ARPs. First, the Court observes that Plaintiff's litigation history, both in this case and in the dozens of other lawsuits filed by him, do not reflect an inability to pursue grievances or alleged wrongdoing against him. To the contrary, with great regularity, Plaintiff has filed lawsuits in federal court complaining both of the fact of his confinement and the conditions of his confinement. Moreover, Plaintiff provides no specific example of how threats, intimidation, or mental illness prevented the filing of ARPs with respect to the specific claims asserted in this lawsuit.

Finally, Plaintiff argues that Defendants did not submit as an exhibit a copy of its grievance procedures and policy. Like numerous assertions made by Plaintiff, this is not quite true. Defendants submitted in support of their motion for summary judgment excerpts from the Inmate Handbook, which outline in detail the MDOC Administrative Remedy Program. *See* Doc. [286-5]. Regardless, Plaintiff does not explain how other MDOC grievance procedures and policies would serve to defeat summary judgment.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' [286] Motion for Summary Judgment is GRANTED on the issue of exhaustion. Plaintiff's claims are dismissed without prejudice based on his failure to exhaust administrative remedies prior to filing the instant lawsuit.

IT IS FURTHER ORDERED that Plaintiff's [395] Motion to Withdraw [386] Response to Defendants' Motion for Summary Judgment is GRANTED.

SO ORDERED AND ADJUDGED, this the 20th day of March 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE